**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SARA MAUREEN STACK, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO.  22-583 |

### MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                    August 24, 2023

     Sara Maureen Stack ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.  Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply.  For the reasons set forth below, Plaintiff's request for review is granted and the case is remanded to the Commissioner.

### I.    PROCEDURAL HISTORY[1]

    On February 7, 2020, Plaintiff applied for DIB, alleging that her disability commenced on June 3, 2019.  R. 15.  The claim was denied, initially and upon reconsideration; therefore, Plaintiff requested a hearing.  *Id.*  On April 19, 2021, during COVID-19 precautions, Plaintiff appeared for a telephonic hearing, before Eric Schwarz, Administrative Law Judge ("the ALJ"); Plaintiff, represented by an attorney, and Donna Nealon, a vocational expert, ("the VE") testified at the hearing.  *Id.*  On May 17, 2021, the ALJ, using the sequential evaluation process ("SEP") for

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply ("Reply"), and the administrative record.  ("R.").

disability,[2] issued an unfavorable decision.  R. 15-29.  The Social Security Administration's Appeals Council denied Plaintiff's request for review, on November 8, 2021, making the ALJ's findings the final determination of the Commissioner.  R. 4-6.  Plaintiff presently seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

A.   <u>Personal History</u>

Plaintiff, born on March 4, 1982, R. 37, was 39 years old on the date of the ALJ's decision. Her work history is comprised of several jobs in the nursing field, R. 52; she stopped working after suffering injuries in a June 3, 2019 motor vehicle accident.  R. 39.  Since separating from her husband, Plaintiff has resided in her mother's home with her mother, stepfather, and teenage son. R. 42.

B.   <u>Plaintiff's Testimony</u>

At the April 19, 2021 administrative hearing, Plaintiff testified about her physical and

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 404.1520(b).

> 2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 404.1520(c).

> 3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 404.1520(d).

> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 404.1520(f).

> 5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.  *See* 20 C.F.R. § 404.1520(g).

mental impairments.  She suffers from headaches, neck pain, inability to sit or stand for long periods of time, cognitive, memory, understanding, and processing difficulties and inability to read.  R. 42-43.

After her car accident, Plaintiff developed an eye tracking problem, which makes it difficult for her to read more than one line of text.  R. 43.  She suffers daily headaches which she lays down to alleviate; sometimes, her headaches cause nausea and require lying down in a dark room to improve.  R. 43.  Plaintiff has difficulty sleeping at night; she often naps four to five hours during the day.  R. 43-44.  Furthermore, her medications cause drowsiness and lethargy throughout the day.  R. 43, 50.  Plaintiff also has auditory limitations and uses hearing aids.  R. 46.

Plaintiff's post-accident neck pain makes it difficult for her to tilt her head sufficiently to eat.  R. 44.  She requires assistance to wash and brush her hair, because lifting her arms above shoulder level causes great pain.  R. 45, 48-49.  Plaintiff's neck pain is so significant that she needs to lie down on the floor to watch television.  R. 50.  Plaintiff's mother and stepfather perform all household chores; she can only drive for approximately ten minutes.  R. 44-45.

Plaintiff sees a therapist to treat her anxiety and depression; the frequency of sessions depends upon the therapist's recommendation.  R. 45-46.  Her poor mental health causes her to feel worthless.  R. 46.  When Plaintiff goes out in public, she becomes agitated, because of her worsened hearing, especially since so many people are wearing masks due to COVID-19.  R. 47.  As a result, she tends to isolate herself.  R. 47.  Approximately two or three times a week, Plaintiff's mental health is so poor that she lacks motivation to dress herself and leave bed.  R. 49.

C.    Vocational Testimony

The VE characterized Plaintiff's past jobs as follows:  (1) a certified medication technician,

semi-skilled,[3] medium[4] exertion; (2) nurse assistant, semi-skilled, medium exertion; (3) nurse, general duty, skilled,[5] medium exertion; (4) nurse supervisor, skilled, light[6] exertion; and (5) school nurse, skilled, light exertion.  R. 52.  The ALJ then asked the VE to consider a person of Plaintiff's age, education, and work experience, with the following limitations:

> No public interaction.  No teamwork.  Apply common sense and understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.  Occasionally or frequently lift and carry ten pounds.  Sit, stand, and walk each up to six hours.  No more than occasional foot controls.  No more than occasional ramps, stairs, stooping, kneeling, or crouching.  Never any ladders, ropes, scaffolds, or crawling.  Up to frequently balancing.  No more than occasional bilateral overhead reaching.  No limits in otherwise reaching, handling, feeling, and fingering.  Avoid concentrated exposure to extreme heat and cold, wetness, humidity, vibration, odors, fumes, dusts, and gasses.  No more than occasional exposure to heights or hazardous machinery.  No reading.

R. 52-53.  The VE responded that this individual could perform the following, sedentary[7] jobs: (1) lens inserter, 222,000 positions in the national economy; (2) scuff folder, 303,000 positions in the national economy; and (3) toy stuffer, 391,000 positions in the national economy.  R. 53.  The VE further opined that, in her experience, employers would tolerate no more than one unscheduled absence per month and being off-task no more than 10 to 15% of the workday.  R. 53-54.  Finally,

---

[3] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."  20 C.F.R. § 404.1568(b).  It is less complex than skilled work but more complex than unskilled work.  *Id.*  "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."  *Id.*

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

[5] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. . . . Other skilled jobs may require dealing with people, fact, or figures or abstract ideas at a high level of complexity."  20 C.F.R. § 404.1568(c).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

the VE stated that employers would not tolerate an employee who needed to lie down for one hour

of the workday.  R. 54.

## III.    THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1.    [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2024.

2.    [Plaintiff] not engaged in substantial gainful activity since June 3, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.     [Plaintiff] has the following severe impairments:  cervical spondylosis with radiculopathy; convergence insufficiency; diplopia; cervicalgia; post-concussive syndrome; post-traumatic headaches; major depressive disorder; and impingement syndrome involving the patellar fat pad of the left knee (20 CFR 404.1520(c)).

4.     [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.    After careful consideration of the entire record, I find that [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [she] can have no public interaction and cannot perform teamwork.    [Plaintiff] can apply common sense understanding to carry out detailed but uninvolved written or oral instructions, and can deal with problems involving a few concrete variables in or from standardized situations. [Plaintiff] can lift or carry up to 10 pounds occasionally to frequently.  In an eight-hour workday, [Plaintiff] can sit, stand, and walk six hours each.  [Plaintiff] can use foot controls no more than occasionally.  [Plaintiff] can never crawl or climb ladders, ropes, or scaffolds; can occasionally kneel, crouch, and climb ramps and stairs; and can frequently balance.  [Plaintiff] can reach overhead no more than occasionally, but has no limits on reaching in other directions, or handling, feeling, and fingering.  [Plaintiff] must avoid concentrated exposure to extreme heat and cold, humidity, vibrations, odors, fumes, dusts, and gases. [Plaintiff] cannot have more than occasional exposure to

       unprotected heights and hazardous machinery.  [Plaintiff] cannot perform reading.

6.      [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

7.      [Plaintiff] was born on March 4, 1982 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.      [Plaintiff] has at least a high school education (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [she] has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform (20 CFR 404.1569 and 404.1569(a)).

11.     [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 3, 2019, through the date of this decision (20 CFR 404.1520(f)).

R. 17-18, 20, 28-29.

## IV.   DISCUSSION

A.    <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation

omitted).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  Indeed, the court is not permitted to weigh the record evidence itself.  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.     Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past

employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.      Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that Plaintiff could not perform her past relevant work but could perform sedentary jobs that exist in the national economy and, hence, was not disabled.  R. 15-29.  Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by improperly assessing :  (1) the visual component of her residual functional capacity ("RFC"); (2) the medical opinions of her treating physician, Dr. Eugene Gorski; (3) the Third-Party Function report provided by her ex-husband; and (4) the persuasiveness of her symptoms.  Pl. Br. at 3-17.  The Commissioner denies Plaintiff's assertions.  Resp. at 1-18.  This court finds that the ALJ provided an improper reason for discounting the Third-Party Function report and the case should be remanded so that the ALJ properly considers this report, because it is relevant to a proper evaluation of Plaintiff's symptoms.

1.     The ALJ Properly Assessed the Visual Component of Plaintiff's RFC

Plaintiff argues that the ALJ's assessment of her visual limitations was unsupported by substantial evidence and insufficiently explained.  Pl. Br. at 3-9.  Specifically, Plaintiff maintains that the ALJ's RFC prohibition on reading was insufficient to account for Plaintiff's visual limitations.  *Id.* at 3-4.  She states that her medical records indicate that she also suffered from blurry vision, light sensitivity, eye strain when looking up, double vision, eye fatigue, and dizziness.  *Id.* at 4 (citing R. 562, 564, 567, 580, 644, 888, 892, 1214, 1245).

When the ALJ evaluated Plaintiff's visual limitations for purposes of assessing her RFC, he relied upon treatment notes contained in Exhibit 8F (R. 561-93).  R. 25.  In his view, those records, which come from Hazelton Eye Specialists and date from September 19, 2019 to April 7, 2020, indicate that Plaintiff's visual acuity had improved, with therapy.  R. 25.

The treatment notes from March 18, 2020 state that Plaintiff's visual acuity had improved since Plaintiff's first visit; Plaintiff herself had noted said improvement.  R. 581.  Furthermore, the treatment notes from Plaintiff's vision therapy indicate that her visual acuity improved with rehabilitation therapy.  *See* R. 569-79.  Since the substantial evidence test is not demanding, *Biestek*, 139 S. Ct. at 1154, the ALJ's reliance upon Exhibit 8F constitutes substantial evidence to support the visual acuity portion of his RFC assessment.  As there is substantial evidence to support his conclusion, it is adequately supported and sufficiently explained.

2.  <u>The ALJ Properly Discounted Dr. Gorski's Opinions that Plaintiff was Disabled</u>

Plaintiff argues that the ALJ improperly rejected Dr. Gorski's oft-stated opinion that she was disabled.  Pl. Br. at 9-13.  The ALJ rejected this opinion because it concerned an administrative finding reserved to the Commissioner and was not a medical opinion.  R. 26 (citing 20 C.F.R. § 404.1527(e)(1)(3)).  The ALJ cited an incorrect regulation;[8] however, the correct regulation, 20 C.F.R. § 404.1520b(c)(3)(i), confirms that an opinion that a claimant is disabled is an issue reserved to the Commissioner; and, hence, is not inherently reliable or persuasive and an ALJ is not even required to provide any analysis about such an opinion.  This regulation is consistent with prior caselaw construing the prior regulation.  *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 n.2 (3d Cir. 2008) (citing 20 C.F.R. § 404.1527(e)(1)).  Hence, the ALJ committed no error in rejecting Dr. Gorski's opinions that Plaintiff was disabled.

---

[8] Section 404.1527 only applies to disability claims filed before March 27, 2017.  Hence, it does not apply to this case.

3.  <u>The ALJ Improperly Assessed the Third-Party Function Report</u>

Next, Plaintiff argues that the ALJ erred because he improperly rejected the Third-Party Function report prepared by her ex-husband, Eric Shermon.  The ALJ acknowledged that Mr. Shermon recounted that Plaintiff had difficulty multi-tasking and staying on topic during conversations and suffered from weakness, and physical pain, particularly when bathing, dressing, and grooming her hair. R. 27.  The ALJ further conceded that some of Mr. Shermon's observations were persuasive, because they were consistent with Plaintiff's documented cognitive impairments and difficulty with overhead activity.  R. 27.  However, the ALJ rejected the balance of Mr. Shermon's report on the ground that, "it is a lay opinion based on casual observation, rather than objective medical evidence or testing." R. 27.

The ALJ's explanation was erroneous.  In *Morton v. Saul*, Civ. A. No. 19-3650, 2020 WL 2847930, *6 (E.D. Pa. 2020), the court explained that, pursuant to Social Security Ruling ("SSR") 16-3p, Third-Party Function reports are relevant information for evaluating a claimant's symptoms.  More specifically, the court stated that, although a layperson may not diagnose a medical impairment, they are competent to "describe what [they] see[]. It is simply untenable to reject lay evidence on the basis that it was prepared by a layperson." *Id.*  That is precisely what the ALJ did in this case.  Therefore, he committed reversible error. *Id.*  On remand, the ALJ shall reconsider all of Mr. Shermon's lay observations[9] and not reject them solely on the ground that they were provided by a lay person.[10]

---

[9] Mr. Shermon's report is quite lengthy and details Plaintiff's extensive limitations.  R. 225-32.  His observations are quite consistent with Plaintiff's testimony about her pain, physical limitations, cognitive limitations, visual limitations, fatigue, and medication side effects. *Id.*  If the ALJ had considered this evidence properly, it is more likely that he would have found Plaintiff's testimony about her symptoms persuasive.

[10] In *Morton*, no remand was needed because the ALJ provided an additional, acceptable reason for rejecting the lay observations contained in the Third-Party Function report. *Morton*, 2020 WL 2847930, *6.  To wit, the ALJ properly found that the lay observations were inconsistent with the record as a whole. *Id.*

4.   <u>The ALJ Failed to Evaluate Properly Plaintiff's Testimony About her Symptoms</u>

Finally, Plaintiff argues that the ALJ erred, because, although he acknowledged that she suffered from daily headaches and sedating side effects from her medication, he declined to find that these limitations were disabling.  Pl. Br. at 15-17.  As noted in the previous section of this opinion, the ALJ erred reversibly with respect to his rejection of Mr. Shermon's Third-Party Function report.  As noted in footnote 9, Mr. Shermon's report is extensive and quite consistent with Plaintiff's testimony about her pain, physical limitations, cognitive limitations, visual limitations, fatigue, and medication side effects.  *See* R. 225-32.  Had the ALJ properly considered Mr. Shermon's report, it is more likely that he would have credited Plaintiff's testimony about her limitations.  Hence, the ALJ's error with respect to Mr. Shermon's report affects his evaluation of Plaintiff's symptoms.  On remand, after the ALJ reconsiders the persuasiveness of Mr. Shermon's report, he, also, shall reconsider whether more aspects of Plaintiff's testimony about her symptoms are persuasive.

An implementing order and order of judgment follow.